**Deloris M. SAUNDERS, Appellant,**

v.

**Massoud NEMATI, Appellee.**

**No. 89–587.**

District of Columbia Court of Appeals.

Submitted June 5, 1990.

Decided Sept. 21, 1990.

Paris A. Artis, Hyattsville, Md., for appellant.

Joseph Montedonico, Washington, D.C., and Patricia M. Tazzara, Rockville, Md., for appellee.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Appellant Saunders filed a complaint against appellee Dr. Nemati alleging in essence that appellee used "extremely outrageous and abusive language to plaintiff which was calculated to and did cause [p]laintiff extreme emotional distress."[1] The only issue presented on this appeal is whether the count of intentional infliction of emotional distress[2] was properly dis-

---

1. Specifically, appellee was alleged to have verbally abused appellant during her three-day hospitalization in early 1982 and in several telephone calls following a written complaint to the hospital by appellant. See note 6, *infra.*

2. The complaint also included a count of malpractice and named Greater Southeast Community Hospital as a codefendant. The appeal as to the hospital was dismissed on appellant's motion during the course of the appeal. In challenging the grant of summary judgment in

missed for failure to bring the action within the period required by our statute of limitations, D.C.Code § 12–301 (1989). The complaint was filed approximately fifteen months after the last of the acts complained of. We reverse.

## A

■ The specific issue before us is whether a cause of action for intentional infliction of emotional distress is governed by the one-year limitation "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," D.C.Code § 12–301(4), or by the general three-year residuary provision applicable to causes of action "for which a limitation is not otherwise specially prescribed." *Id.* § 12–301(8).

The traditional common law refused all remedy for mental distress unless it could be brought within the scope of some already recognized tort. "[I]f some independent tort, such as assault, battery, false imprisonment, or seduction could be made out, the cause of action served as a peg upon which to hang the mental damages and recovery was freely permitted." W. KEETON, D. DOBBS, R. KEETON, D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 12, at 57 (5th ed. 1984) (footnotes omitted). However, "somewhere around 1930, it began to be recognized that the intentional infliction of mental disturbance by extreme and outrageous conduct constituted a cause of action in itself." *Id.* at 60. The independent existence of such a tort is now well established, both in the District, *see Clark v. Associated Retail Credit Men,* 70 App.D.C. 183, 186, 105 F.2d 62, 65 (1939); *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (tracing history); *see also Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990) (en banc) (negligent infliction of emotional distress), and in American jurisprudence generally. *See* RESTATEMENT

(SECOND) OF TORTS § 46 (1965). Therefore, by an ordinary plain reading of our statute of limitations, this distinct cause of action is not included in section 12–301(4) or any other particularized subsection and therefore falls within the residuary subsection (8).

Nonetheless, the principal assertion on appeal is that in actions for intentional infliction of emotional distress, the applicable statute of limitations is properly determined by the nature of the underlying acts. Here, it is said, the claim is best characterized as one for assault and hence subject to the one-year statute of limitations.

## B

It is well settled that in a determination of the applicable statute of limitations, the plaintiff's characterization of the claim is not controlling. Thus, in *Morfessis v. Baum,* 108 U.S. App.D.C. 303, 281 F.2d 938 (1960), the court looked to the substantive elements of the alleged cause of action and concluded that the complaint stated a case of malicious prosecution, which was barred by the one-year statute of limitations, rather than abuse of process, despite the contrary assertion in the complainant's caption. "The action thus pleaded cannot ... be removed from its place in the law of torts by calling what occurred also an abuse of process." *Id.* at 305, 281 F.2d at 940. *Accord, Maddox v. Bano,* 422 A.2d 763, 765 (D.C.1980) (complaint held to plead "in substance a cause of action for assault, battery, false arrest" and not negligence despite complaint's use of negligence label); *Kelton v. District of Columbia,* 413 A.2d 919, 922 (D.C.1980) (complaint alleged battery and negligence, but "elements of alleged offense" set forth only battery).

At times, indeed perhaps frequently, as the early history of the development of the tort discussed above indicates, damages for emotional distress will in substance simply

---

appellee's favor on the malpractice count, appellant's brief asserts only that since the alleged factual basis of the malpractice was intentional conduct, no physical injury was required. In this respect, the malpractice count would seem to be essentially subsumed within the count of intentional infliction of emotional distress. In

any event, the argument now made does not appear to have been presented to the trial court, and we therefore do not deal with it further on appeal. *Miller v. Avirom,* 127 U.S. App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967). Accordingly, the summary judgment with respect to the malpractice count is affirmed.

be an element of some other cause of action. Thus, in certain cases where intentional infliction of emotional distress was included among a number of alleged torts, the one-year statute of limitation has been applied where the nature of the action rested on the other torts and the emotional distress aspect of the claim was essentially an outgrowth of the other pleaded torts. This appears to have been the situation in *Hanoch Tel–Oren v. Libyan Arab Republic*, 517 F.Supp. 542 (D.D.C.1981), *aff'd on other grounds*, 233 U.S. App. D.C. 384, 726 F.2d 774 (1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985), the case cited by the trial court in its brief order of dismissal. That action arose out of an alleged terrorist attack on a bus in Israel, in which twenty-nine people died. The plaintiffs were certain individuals injured in the attack and the personal representatives of the twenty-nine persons killed in the attack. The plaintiffs alleged the torts of "assault, battery, false imprisonment, intentional infliction of emotional distress and/or intentional infliction of cruel, inhuman and degrading treatment." *Id.* at 550. The court granted the motion to dismiss on all counts, stating that "[c]learly, the torts alleged ... are dependents of the same personal interests infringed by the intentional torts that would be subject in the District of Columbia to the one year limitation period." *Id.* A similar analysis may be applied to two other cases cited by appellee: *Thomas v. News World Communications*, 681 F.Supp. 55, 73 (D.D.C.1988) (plaintiffs' claim for emotional distress "is

thus completely dependent upon and 'intertwined' with their claims for libel, defamation, and assault and/or battery"), and *de la Croix de Lafayette v. de la Croix de Lafayette*, 117 Daily Wash.L.Rptr. 2133, 2138 (D.C.Super.Ct. Aug. 14, 1989) (the "underlying tort of plaintiff's claim for intentional infliction of emotional distress is an assault and battery").[3] Conversely, in *Burda v. National Association of Postal Supervisors*, 592 F.Supp. 273 (D.D.C.1984), *aff'd*, 248 U.S.App.D.C. 415, 771 F.2d 1555 (1985), where the plaintiff sought damages for fraud, conspiracy, tortious interference with a contractual relationship, and intentional infliction of emotional distress (as well as for certain constitutional violations), the court applied a three-year statute of limitations, rather than the claimed one-year period, to the emotional distress tort because the claim "is intertwined with claims which fall within the three-year limitation." *Id.* at 281. *Accord, Rochon v. FBI*, 691 F.Supp. 1548, 1562 and n. 19 (D.D.C.1988).

The situation is different in the case before us. We deal with a dismissal of the action and therefore look only to the allegations of the complaint.[4] We apply the familiar doctrine that "the complaint must be construed in the light more favorable to the plaintiff and its allegations taken as true." *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979) (per curiam).[5] So viewed, the claim of intentional infliction of emotional distress is pled as a clear and distinct tort stemming from the verbal abuse by the defendant, with the alleged harm set

---

**3.** That case broadly states that in the District "what statute of limitation applies to an action for intentional infliction of emotional distress depends upon acts underlying the alleged infliction of emotional distress." *Id.* at 2138. While this approach appears unexceptional on the facts of that case, it can be read to be, as this opinion indicates, an overly inclusive statement of the applicable principle.

**4.** Although appellee moved to dismiss or, in the alternative, for summary judgment, the trial court's order is explicitly an order of dismissal. Furthermore, the trial court contemporaneously granted summary judgment for appellee on the malpractice cause of action contained in Count I of the complaint, making clear its awareness of the distinction between the two forms of disposition.

**5.** This is not to say that the actual facts as developed may not warrant a subsequent determination that the cause of action here is in fact a mislabeled count. (Neither party in the motions papers made any argument based on facts outside the pleading.) There is some indication in the deposition of the plaintiff, contained in the record on appeal, that an element of fear of physical abuse by the appellee—perhaps the dominant element—may have been involved. Appellee's counsel did not, however, sharpen this theme in questioning, and the burden of proof in establishing the bar of the statute of limitations falls on the defendant. *Pekofsky v. Blalock*, 175 A.2d 604, 605 (D.C.1961).

forth as the "extreme emotional, psychological and physical distress and discomfort" suffered by the plaintiff.[6] The only other count contained in the complaint, Count I, involved medical malpractice, based upon the delay in rendering care and verbal abuse by appellee. Medical malpractice is not a distinct cause of action for statute of limitations purposes, but instead depends upon the underlying acts. *See Canterbury v. Spence,* 150 U.S.App.D.C. 263, 284, 464 F.2d 772, 793, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972). Consequently, the verbal abuse would be subsumed within the acts constituting intentional infliction of emotional distress and governed by the same limitations period and the negligence element governed by the residuary three-year statute of limitation period.[7] Thus, on the face of the complaint here, there were no other causes of action with distinct limitation periods so as arguably to constrict the time period otherwise applicable to an action for intentional infliction of emotional distress.

### C

It is asserted, however, that even if the count of intentional infliction of emotional distress is viewed in isolation, the one-year statute of limitations in section 12–301(4) should be read to encompass all intentional torts[8] or, at least, an intentional tort as closely related to an enumerated tort as the intentional infliction of emotional distress alleged here is to the enumerated tort of assault.

The first argument sweeps too broadly. It is true that the relevant language of our current statute of limitations can be traced back at least to 1901,[9] Act of March 3, 1901, ch. 854, § 1265, 31 Stat. 1189, 1389, at which time no independent tort of intentional infliction of emotional distress was recognized. However, even at that time, not all recognized intentional torts were subject to a one-year limitation. For instance, actions for injury to realty or personalty or for recovery of personal property expressly bore a three-year limit, *id.,* as they do to this day. D.C.Code § 12–301(2), (3). In *Morfessis, supra,* it was assumed that the tort of abuse of process was governed by the three-year residuary provision, rather than the one-year provision of section 12–301(4). 108 U.S.App.D.C. at 304, 281 F.2d at 939. Nor have section

---

**6.** The complaint contains an opening section with general facts and two specific counts, Count I for malpractice and Count II for intentional infliction of mental distress. The opening section states (paragraph numbers omitted):

> From January 29, to February 1, 1982, Plaintiff was hospitalized at Defendant Greater Southeast Community Hospital.... Plaintiff was in the hospital for diagnosis care and/or treatment relative to a cardiac condition.... Despite Plaintiff's known condition and several requests and inquiries by Plaintiff, Defendant Nemati neglected, failed and refused to render any care or attention to Plaintiff until nearly two (2) days after her admission. When Defendant Nemati finally responded to Plaintiff, he entered her room and began to verbally abuse and treat her in an extremely rude manner. Plaintiff demanded that defendant Nemati leave her room and thereafter requested another physician. Despite Plaintiff's prior request that Defendant Nemati leave her room, said defendant nonetheless returned to her room causing Plaintiff considerable fear and discomfort. During late August of 1983, Plaintiff sent a written complaint to Defendant Greater Southea[s]t Commun[it]y Hospital. Thereafter, during early October, 1983, Plaintiff received several telephone calls from Defendant Nemati. Said

> Defendant used extremely outrageous and abusive language to plaintiff which was calculated to and did cause Plaintiff extreme emotional distress.

Count II incorporated these facts by reference and then stated in pertinent part (paragraph numbers omitted):

> Defendant Nemati's conduct and course of conduct toward Plaintiff was extremely outrageous, intentional, malicious, and beyond the bounds of professional and human decency. As a result Plaintiff suffered extreme emotional, psychological and physical distress and discomfort.

**7.** The summary judgment in favor of appellee on the malpractice count was not, however, based on the statute of limitations but rather on the absence of any genuine issue as to any material fact. See note 2, *supra.*

**8.** This was appellee's principal argument to the trial court.

**9.** The language has been traced to a far more remote origin in an English statute of 1623. *See Marusa v. District of Columbia,* 157 U.S. App. D.C. 348, 353 n. 15, 484 F.2d 828, 833 n. 15 (1973).

12–301(4) or its predecessors ever been applied to the intentional torts of fraud, interference with contractual relations, and the various torts to family relations, such as alienation of affections and seduction, all of which existed *prior* to 1901. *See Interdonato v. Interdonato,* 521 A.2d 1124, 1136 (D.C.1987) (applying three-year residuary clause to fraud claim); RESTATEMENT (SECOND) OF TORTS § 766 comment c, at 8–9 (tracing tort of intentional interference with contractual relations to a British case of 1853); 2 F. HARPER, F. JAMES, O. GRAY, THE LAW OF TORTS § 8.1 at 500 (2d ed.1986) (tracing torts to family relations back to seventeenth century). The courts have also understood the three-year residuary provision to apply to constitutional torts alleged under 42 U.S.C. section 1983, which was enacted in 1871. *Hobson v. Wilson,* 237 U.S. App.D.C. 219, 250, 737 F.2d 1, 32 (1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Act of Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13 (original enactment of 42 U.S.C. section 1983). Had the legislature intended to provide a one-year limitation for all intentional torts or a generic subcategory, it presumably would have said so in so many words.

Appellee argues, however, that a claim based on verbal abuse, as here, can fairly be characterized as sufficiently close to the enumerated tort of assault as to make applicable the one-year limitation of section 12–301(4). We think the contrary and agree with the court's analysis in *Robinson v. Vitro Corp.,* 620 F.Supp. 1066 (D.Md. 1985). There, the court rejected such an argument under the Maryland statute very similar to our own.[10] As the court observed,

> [t]he tort of assault is designed to protect a person's interests to be free from apprehension of intentional physical contact.

On the other hand, the tort of intentional infliction of emotional distress was recognized to protect persons from any extreme and outrageous conduct calculated to cause serious mental distress. The interests being protected are thus distinct.

*Id.* at 1072. This same analysis, as a matter of general American jurisprudence, is reflected in the *Restatement (Second) of Torts,* which distinguishes "the interest in freedom from apprehension of a harmful or offensive contact," *id.* § 21, at 38, protected by the tort of assault, from "the interest in freedom from emotional distress," *id.* § 46, at 72, protected by the tort of intentional infliction of emotional distress. Thus, "[w]ords do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person." *Id.* § 31, at 47. *Cf. Person v. Childrens Hospital Nat'l Medical Center,* 562 A.2d 648, 650 (D.C.1989).

As indicated above, the distinct tort of intentional infliction of emotional distress has been in existence for a half-century or more. During this period, the statute of limitations provision has not gone unnoticed. In 1963, titles 11–17 of the then unofficial District of Columbia Code were enacted by Congress into positive law, Act of Dec. 23, 1963, Pub.L. No. 88–241, 77 Stat. 478, at which time the wording and structure of the statute of limitations provision, although not its substance, were considerably altered. *Id.,* 77 Stat. at 510. Subsequently, our legislature has seen fit to add limitations for specific causes of action and to exempt the District from the statutory provision, but without making any changes in the subsections at issue here.[11] It has been said that where there is

---

**10.** The Maryland statute contains a general residuary three-year limitation and a one-year limitation for "assault, libel, or slander." Md. Cts. & Jud.Proc.Code Ann. §§ 5–101, 5–105 (1988).

**11.** In 1979, a provision was added setting a one-year time limit for actions alleging violations of the District of Columbia Mental Health Information Act. District of Columbia Mental

Health Information Act of 1978, D.C.Law 2–136, § 805(c), 1978 D.C.Stat. 422, 431 (1979) (currently codified at D.C.Code § 12–301(9)). In 1987, a provision was added setting a five-year time limit for the recovery of damages for injury to real property from toxic substances, District of Columbia Statute of Limitations Amendment Act of 1986, D.C.Law 6–202, 1986 D.C.Stat. 634 (1987) (currently codified at D.C.Code

doubt as to which period of time should apply, the longer period is to be preferred. *See* 51 Am.Jur.2d *Limitation of Actions* § 863, at 641–42 (1970), and cases cited. This would seem particularly warranted here, given the emphasis in the residuary provision of subsection (8) that a three-year limitation period shall apply where a limitation period "is not otherwise *specially* prescribed" (emphasis added).

■ In sum, we see no basis for deviating from the well established principle that the plain language of a statute normally controls. We therefore hold that an independent action for intentional infliction of emotional distress, not intertwined with any of the causes of action for which a period of limitation is specifically provided in the other provisions of section 12–301, is governed by the general residuary three-year limitation of section 12–301(8). Accordingly, the order dismissing appellant's complaint against appellee insofar as it applies to the count of intentional infliction of emotional distress as pled in the complaint must be

*Reversed.*

§ 12–301(10)), as well as a clause eliminating any application of section 12–301 to actions brought by the District of Columbia government. *Id.*