**Renay HUNTER, Appellant,**

v.

**The DISTRICT OF COLUMBIA,
Appellee.**

No. 88–7265.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1990.
Decided Aug. 30, 1991.

Michael S. Rosier, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before WALD, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The district court dismissed plaintiff's complaint, which made various claims at common law and under the civil rights statutes, against the District of Columbia and two of its police officers. We affirm except as to the § 1983 claim asserted against one of the police officers. We remand that claim to the district court for the plaintiff to replead in conformity with the heightened pleading standard discussed below.

I. BACKGROUND

According to the allegations of the complaint, plaintiff Renay Hunter was arrested by District of Columbia police officers on November 8, 1986, in connection with a car accident. After he was arrested and while he was handcuffed, the officers beat him,

causing severe, permanent physical and mental injuries. On March 16, 1988, Hunter sued the two officers and the District of Columbia, making claims under § 1983 (and other civil rights statutes as to which Hunter does not appeal), and common law claims for assault and battery, intentional infliction of emotional distress, and negligent hiring and training. Upon the defendants' motion to dismiss the complaint, the district court found that all of the claims were barred by the District's one year statute of limitations for assault and battery, and that the common law tort claims were also barred by Hunter's failure to give the District the timely and detailed notice of the incident required by D.C.Code § 12–309.

## II. CLAIMS UNDER D.C. LAW

We affirm the district court in dismissing each of the claims based upon the laws of the District of Columbia.

### A. *Assault, Battery, and Intentional Infliction of Emotional Distress*

■ D.C.Code § 12–301 states in pertinent part:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

. . . . .

(4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment— 1 year;

. . . . .

(8) for which a limitation is not otherwise specially prescribed—3 years.

■ Hunter's claim for assault and battery is thus clearly barred by the one-year statute of limitations in § 12–301(4). As for his claim for intentional infliction of emotional distress, Hunter asserts that the one-year limitation of § 12–301(4) does not apply—thereby implying that the three-year residual statute of limitations in § 12–301(8) governs—while the District flatly asserts that § 12–301(4) does apply. Neither side cites any precedent or offers any argument in support of its position.

In fact, a recent decision of the D.C. Court of Appeals indicates that both parties err in suggesting that any single statute of limitations governs all claims of intentional infliction of emotional distress in the District. In *Saunders v. Nemati*, 580 A.2d 660 (D.C.1990), the court held that "an independent action for intentional infliction of emotional distress, not intertwined with any of the causes of action for which a period of limitation is specifically provided in the other provisions of section 12–301, is governed by the general residuary three-year limitation of section 12–301(8)." *Id.* at 665. The wrongful act asserted in *Saunders* was "extremely outrageous and abusive language to plaintiff which was calculated to and did cause Plaintiff extreme emotional distress." *Id.* at 663 n. 6. In holding that this "independent" tort is governed by the residual statute of limitations, the court distinguished—and apparently approved application of the one-year statute of limitations to—cases in which the wrongful act alleged is assault, battery, or libel. *See id.* at 661–63, citing *Hanoch Tel–Oren v. Libyan Arab Republic*, 517 F.Supp. 542 (D.D.C.1981); *Thomas v. News World Communications*, 681 F.Supp. 55, 73 (D.D.C.1988); *de la Croix de Lafayette v. de la Croix de Lafayette*, 117 Daily Wash.L.Rptr. 2133, 2138 (D.C.Super.Ct. Aug. 14, 1989).

Hunter's complaint did not allege any facts suggesting that the defendants intentionally caused him emotional distress by conduct "independent" of the alleged assault and battery. Therefore, the one-year statute of limitations bars this claim, as the district court held.

### B. *Negligent Hiring and Supervision*

■ Hunter's complaint also asserts that "the Defendant District of Columbia did negligently and carelessly fail to appropriately educate, supervise, train and/or discipline Defendant [Police Officers] with respect to the utilization of force," and that the officers caused him injury as a result

of this failure. It is established that negligent supervision or training of police officers does state a cause of action in the District. *See District of Columbia v. White,* 442 A.2d 159, 164–65 (D.C.1982); *District of Columbia v. Davis,* 386 A.2d 1195, 1199–1201 (D.C.1978).

 The district court dismissed this claim, too, pursuant to the one-year statute of limitations in § 12–301(4). There is no case directly on point, but as we read § 12–301, the three-year residual statute of limitations presumably governs this cause of action, even if the negligent conduct of the District is alleged to have resulted in an intentional tort by the police.

We nevertheless affirm the district court's dismissal of this claim because Hunter failed to give the District the detailed notice of the claim required by § 12–309 (1981). At all relevant times, that section provided:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the [Mayor] of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

The District courts have repeatedly held that because § 12–309 is in derogation of sovereign immunity, it must be strictly construed. *See, e.g., Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C.1990).

Hunter's attorney notified the District of his claim in a 1986 letter, the body of which stated in its entirety:

## NOTICE OF CLAIM AGAINST THE DISTRICT OF COLUMBIA

Dear Sir:

Please be advised that I represent [Renay Hunter,] claimant who was injured on [November 8, 1986] in the District of Columbia when he was beaten by officers of the District of Columbia Police Department.

Accordingly we are placing the District on notice pursuant to D.C.Code § 12–309 of this Cause of Action and request the Corporation Counsel of the District of Columbia to contact the below signed attorney in an effort to resolve this matter amicably.

The District argues that the purported notice lacked sufficient detail about the "circumstances of the injury" to enable it to conduct a meaningful investigation. We need not come to closure on that point, however, because it is clear that the letter gave neither the approximate time nor place of the injury, as required by the statute. *See Washington v. District of Columbia,* 429 A.2d 1362, 1365 n. 7 (D.C.1981) (claimant must give "an approximate estimate of the time of the accident"); *Pitts v. District of Columbia,* 391 A.2d 803, 807 (D.C.1978) (notice should describe the situs of the injury in such a manner as to enable the investigating agency to find it).

 In view of the patent inadequacy of the letter, Hunter also invokes the "police report" alternative notice provision of the statute. In order to satisfy § 12–309, a police report must contain the same information that the statute expressly requires of a letter, "with at least the same degree of specificity." *Campbell,* 568 A.2d at 1078–79. The District Court record, however, does not contain any police report or, for that matter, any reason—other than Hunter's allegation that he was arrested—to believe that one exists. As a result, it is impossible for us to conclude that § 12–309 has been satisfied. *See id.* at 1078–79 ("appellants have made no showing that the District is actually in possession of a ... report ... or that the report contains the specificity required of a formal notice") (re alternative holding).

 Although Hunter argues that he was not given an opportunity to discover whether there exists a police report that could serve as notice of his claim, the District points out that three months elapsed between the filing of its motion to dismiss

and the close of discovery. "Appellant had ample time to request any police department reports during that period. He made no such request, either before, or after, the close of discovery." Nothing in the record or in Hunter's reply brief contradicts this account, and so we reject his lack of opportunity argument.

■ Hunter also argues that "[t]he purpose of the Statute ... to permit the District of Columbia to conduct an early investigation of the facts and circumstances surrounding claims against it" has been satisfied in this case because "the District had agents [presumably the police officers] present at the scene, and had every opportunity, as well as a duty, to investigate this matter." The District courts, however, have held that notice to a subordinate official does not take the place of written notice to the District itself. *See Pitts*, 391 A.2d at 806 n. 3. It is particularly clear that if the knowledge and the investigative duty of the very employees alleged to have committed an intentional tort were deemed notice to the District, the statutory notice requirement would be entirely gutted.

■ Charitably construed, Hunter's brief also suggests the slightly different argument that the injury of which he complains disabled him from notifying the District of the details of the incident as required by § 12–309, and that it would be unjust to allow the District to benefit in this way from the harm it did to him. In *Hill v. District of Columbia*, 345 A.2d 867 (D.C.1975), the plaintiff was in the hospital under heavy sedation for five months as a result of being injured by District employees. The D.C. Court of Appeals left open the question whether the six-month limit of § 12–309 can be extended where the fault of the government makes timely compliance truly impossible; the court refused to permit such an extension where the plaintiff failed to set forth "specific facts showing a genuine issue as to whether he reasonably could have complied with the [six-month limit in the] statute." *Id.* at 869–70. To argue for an extension, then, a plaintiff must do more than make vague assertions on appeal regarding his injuries. Hunter

has not at any stage of these proceedings offered an affidavit regarding the "disorientation" he claims in his brief to this court, much less any supporting evidence, such as a doctor's report or hospital record showing the severity and type of his injuries. Because of this failure of proof, and because Hunter does not claim to have sought a police report without success, however, we need not decide whether the time limit or other requirements of § 12–309 would be waived in the case of a plaintiff demonstrably rendered, by the injury of which he complains, unable to comply with them.

### III. SECTION 1983 CLAIMS

While this appeal was pending, the Supreme Court held in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), that in a jurisdiction with both a statute of limitations for enumerated intentional torts and a general or residual statute of limitations for personal injury actions, a § 1983 claim is subject to the latter. Therefore the district court's decision to dismiss Hunter's § 1983 claims cannot be upheld upon the basis of the statute of limitations. Because we may affirm the dismissal upon any applicable legal ground, *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1942), we examine below the alternative grounds potentially applicable to Hunter's claims, respectively, against the District and against the one police officer as to whom he pursues this appeal.

### A. *Against the District of Columbia*

■ The dismissal of Hunter's claim against the District of Columbia was warranted because he alleged neither a municipal policy that led to the alleged police misconduct, nor any action by a District policymaker amounting to "deliberate indifference" to rights of the public. *See Graham v. Davis*, 880 F.2d 1414, 1421 (D.C.Cir. 1989). Furthermore, the law was clear when Hunter filed his complaint that a municipality could not be held liable under § 1983 on a theory of respondeat superior

or of negligent training. Therefore, Hunter has no right to amend his complaint as to this count. *See id.*

B. *Against the Police Officer*

 Hunter's claim against the individual police officer for using excessive force in violation of his Fourth Amendment rights is not so clearly deficient. The complaint alleges that on a certain date he was arrested by two police officers "in connection with a motor vehicle accident"; it continues

> After he had been arrested, and while he was handcuffed, [they] did forecably [sic] hit and strike [him] in and about his head and face and body.... As a direct and proximate result of the intentional, malicious and negligent conduct of the [officers, he] was caused to sustain severe, painful permanent injuries to various parts of his body and to suffer serious and permanent mental distress and anguish and psychological injuries, and loss of income, pain and suffering and public humiliations. Permanent damage and disfigurement to his ear as well as acute emotional and psychological damage. [sic]

As part of a separate count apparently attempting to allege assault and battery, Hunter also stated that the actions of the defendants were "without legal or just cause, provocation."

Hunter's complaint against the officer must meet three related requirements. First, because Hunter seeks to hold a government official liable for his performance of a discretionary function, the complaint must be sufficiently detailed to enable the district court to decide at the outset whether his action may proceed to discovery and trial. Second, the pleaded facts must show that the officer's alleged use of force violated Hunter's Fourth Amendment right to be free from unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Third, because the officer may have a qualified immunity from liability for his conduct in making the arrest, the complaint must demonstrate that the officer's con-

duct violated a constitutional right of Hunter's that was clearly established at the time of the alleged beating in 1986.

 *First.* Police officers making an arrest, like other "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known." *Martin v. Malhoyt*, 830 F.2d 237, 252–53 (D.C.Cir.1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C.Cir.1991). In order that an official also be spared the burdens of discovery and trial upon the basis of allegations that will not ultimately support a judgment against him, *see Whitacre v. Davey*, 890 F.2d 1168, 1170–71 (D.C.Cir.1989), we require that a complaint alleging conduct by a government official performing a discretionary function meet a "heightened pleading" standard. That is, it must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. *See, e.g., Martin*, 830 F.2d at 254 & nn. 40–41, 256–67.

 We recognize that some of our previous opinions could be read to suggest that the heightened pleading requirement is applicable only if the defendant has a qualified immunity "defense" to a charge that he acted unconstitutionally. *See id.* at 254. We now make it clear that the heightened pleading requirement is not contingent upon the existence of a substantively distinct qualified immunity "defense," (at least where, as with the excessive force claim presented here, there are specific facts to which the plaintiff himself has access that could show whether the defendant may have acted unreasonably in the circumstances). Rather, it is the social cost of distracting government officials with litigation that gives rise both to the qualified immunity defense and to the heightened pleading requirement. In other words, it is the propriety of the qualified immunity analysis, rather than recognition of a sub-

**76**

stantively distinct qualified immunity defense, that underpins the heightened pleading requirement. *See id.* at 256–57. That the question whether the degree of force used was reasonable or excessive may be determined as part of a plaintiff's cause of action, rather than as part of the officer's separate defense, see below, hardly justifies releasing the plaintiff from the obligation to plead specific facts.

While we recognize that a plaintiff does need to be more careful and complete in order to draft a complaint that meets the heightened pleading standard, we do not believe than an undue burden is involved where the alleged victim of excessive force is able to recount the facts. The pleading standard requires no more than that the plaintiff tell his story, relating the pertinent information that is already in his possession. *Cf. Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1800–01, 114 L.Ed.2d 277 (1991) (Marshall, J., dissenting) (heightened pleading standard should not require plaintiff to assert facts evidence of which is "peculiarly within the control" of the defendant). The Supreme Court has consistently emphasized that the "qualified immunity question should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042, n. 6, 97 L.Ed.2d 523 (1987). There is no reason to excuse the plaintiff from pleading the facts to which he has access, when that might enable the court to determine at the pleading stage that the defendant acted reasonably (i.e., that the jury could not determine that the defendant acted unreasonably based upon the plaintiff's version of the events).

■ *Second.* When a plaintiff alleges a violation of his constitutional right by a government official whose actions may be qualifiedly immune from liability, the complaint must establish both (1) that the plaintiff was deprived of a constitutional right, and (2) that the right in question was "clearly established" at the time the defendant acted. *See Siegert,* 111 S.Ct. at 1793–94 (mandating the order of the two-part analysis and therefore affirming the judgment of this court on the ground that the

plaintiff suffered no unconstitutional injury). We consider first the current constitutional standard for use of excessive force during arrest.

■ Since the 1989 decision in *Graham,* 490 U.S. 386, 109 S.Ct. 1865, whether an officer used excessive non-deadly force during an arrest has been governed by the "objective reasonableness" standard of the Fourth Amendment. In *Graham* the Court explained that it was "mak[ing] explicit what was implicit" in *Tennessee v. Garner,* 471 U.S. 1, 7–9, 11, 105 S.Ct. 1694, 1699–700, 1701, 85 L.Ed.2d 1 (1985), a case in which the Court had applied the "totality of the circumstances" test of the Fourth Amendment to a claim of deadly force used against a fleeing felon. 490 U.S. at 395, 109 S.Ct. at 1871. The Court went on to hold that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard," *id.* (emphasis in original), rather than under any of the more demanding substantive due process tests that most of the courts of appeals had previously applied, *see* Comment: *Rethinking Excessive Force,* 1987 Duke L.J. 693, 693–94 (Sept. 1987). The objective reasonableness standard is not capable of "precise definition or mechanical application." 490 U.S. at 396, 109 S.Ct. at 1871. Rather, the court must consider all of the facts and circumstances of each case, including the severity of the crime occasioning the arrest, whether the suspect posed an immediate threat to the safety of the officer or of anyone else, and whether he actively resisted or attempted to flee. *Id.* While the court should avoid reliance upon hindsight and should take into account the officer's need to make split-second judgments at the time he acted, the test is, in the end, still the objective reasonableness of his conduct. *Id.* at 396, 388, 109 S.Ct. at 1871, 1867.

■ When a plaintiff claims that an officer used excessive force, the heightened pleading standard demands that he make "nonconclusory allegations of evidence" sufficient to demonstrate that the force

used actually was unreasonable. *See Martin,* 830 F.2d at 257, quoting *Hobson v. Wilson,* 737 F.2d 1, 29 (D.C.Cir.1984). A bare assertion that force was used is insufficient, as is a conclusory description of that force as "excessive." Many factors may be relevant to the ultimate conclusion as to whether the force used was reasonable, and like the Supreme Court in *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871, we do not attempt here to give an exhaustive list. We note only that in drafting a complaint, counsel may consider, in addition to the factors mentioned by the Supreme Court in *Graham,* those itemized by the Fifth Circuit in *Brown v. Glossip,* 878 F.2d 871, 874 (5th Cir.1989) (whether officer harbored ill-will toward the plaintiff, whether a warrant was used, whether the plaintiff resisted arrest or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of the arrest, and what the arrest charges were).

*Third.* Because the district court may have to determine on remand whether Hunter's amended complaint contains non-conclusory allegations of fact sufficient both to demonstrate that the force used was actually excessive and to defeat any potential qualified immunity defense, we also consider the substantive content of any qualified immunity defense the officer may have to Hunter's claim. We note again that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S., at 819 [102 S.Ct., at 2738], assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.,* at 818 [102 S.Ct. at 2738]." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038.

Several courts have concluded that qualified immunity principles provide no substantively distinct "defense" to a charge that a police officer used excessive force during an arrest made after the Supreme Court established in *Graham* that the Fourth Amendment objective reasonableness test governs. *See Jackson v. Hoylman,* 933 F.2d 401, 402–03 (6th Cir.1991); *Street v. Parham,* 929 F.2d 537, 540–41 & n. 2 (10th Cir.1991); *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991); *see also* Urbonya, *Problematic Standards of Reasonableness: Qualified Immunity in Section 1983 Actions for Police Officer's Use of Excessive Force,* 62 Temple L.Rev. 61, 67 (1989). *But see Slattery v. Rizzo,* 939 F.2d 213, 215–17 (4th Cir.1991) (probable cause to use deadly force); *Finnegan v. Fountain,* 915 F.2d 817, 823 & n. 11 (2d Cir.1990); *Brown v. Glossip,* 878 F.2d 871, 874–75 (5th Cir.1989). Once it is determined that the officer acted unreasonably in using a certain amount of force, these courts note, it will not be open to him to argue that a reasonable officer would not have believed that his conduct violated the Constitution. Any qualified immunity "defense" would be redundant, its substance having been incorporated into the cause of action itself.

We too doubt whether a substantively distinct qualified immunity defense would be available to an officer acting after *Graham,* but we need not resolve that question here. *See Graham,* 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12 (leaving open question of proper application of qualified immunity in excessive force cases arising under the Fourth Amendment); *Graham v. Davis,* 880 F.2d 1414, 1419 (D.C.Cir.1989) (same). The officer's conduct in this case occurred in 1986, three years before *Graham* was decided. The reasonableness test made applicable in that case is a shift away from the three- and four-part due process tests that the courts of appeals had previously applied in cases alleging excessive force, *see Comment: Rethinking Excessive Force,* 1987 Duke L.J. at 693–94; and those tests did not "clearly establish" a constitutional right to be free from all force defined as "excessive" under *Graham.* A typical four-part test required the court to consider "the need for application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.). *See also Chathas v. Smith*, 884 F.2d 980, 988 (7th Cir.1989) (three-part test).

Because *Graham* broadened the scope of the constitutional right to be free from the use of official force, other courts have given content to an independent qualified immunity defense by applying the *Graham* standard as current constitutional doctrine on "excessiveness," but continuing to apply their own pre-*Graham* due process tests in order to determine the contours of the "clearly established" right of which a reasonable officer should have been aware prior to *Graham*—and thus ultimately to determine liability for behavior occurring prior to *Graham*. *See Mouille v. Live Oak*, 918 F.2d 548, 551 (5th Cir.1990); *Finnegan v. Fountain*, 915 F.2d 817, 824 n. 10 (2d Cir.1990); *Chathas v. Smith*, 884 F.2d 980, 989 (7th Cir.1989); *see also Hannula v. Lakewood*, 907 F.2d 129, 131–32 (10th Cir.1990) (excessive force determined per *Graham*, but as applied to pre-*Graham* conduct, scope of qualified immunity defense governed by more demanding due process test). *But see Dixon v. Richer*, 922 F.2d 1456, 1461–63 (10th Cir.1991) (apparently limiting *Hannula* to cases in which plaintiff did not expressly rely upon Fourth Amendment and asserting that even prior to *Graham, Garner* and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) had established principle that seizure must be objectively reasonable).

At the time of the defendant's actions in this case, this circuit had not expressly adopted either a due process standard or the Fourth Amendment standard for cases charging use of excessive force incident to an arrest. In *Carter v. Carlson*, 447 F.2d 358, 361 (D.C.Cir.1971), *rev'd on other grounds*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), we stated in passing that excessive force violates the right to be free from unreasonable seizure; but that single statement does not amount to "clearly established" law, especially in view of the nearly unanimous adoption of a due process test in the other circuits. We did not clearly adopt the Fourth Amendment objective reasonableness standard for the use of force during an arrest until *Martin*, 830 F.2d at 261 & n. 76 (Sept. 29, 1987)—nearly a year after the officer's conduct in this case.

The due process test adopted in *Norris v. District of Columbia*, 737 F.2d 1148 (D.C.Cir.1984), for the use of force during pretrial detention establishes a minimum standard that can be applied to pre-*Martin* conduct. In *Norris*, after quoting the four-part due process test laid down by Judge Friendly in *Johnson v. Glick*, we reversed the trial court's dismissal of a complaint alleging that the plaintiff had been beaten. "In accord with numerous other courts, we [held] that the amount of force required to state a constitutional claim for prison officer battery varies with the justification for that force." *Id.* at 1152. In applying this test, we differentiated two situations. Where "gratuitous brutalization" is involved, "less force oriented towards that end is needed to shock the judicial conscience." *Id.* Where some force is justified, the "Constitution may be offended if the force used grossly exceeds that warranted by the circumstances." *Id.* at 1152 n. 8.

 In summary, we hold that complaints alleging excessive force must contain "nonconclusory allegations" of fact sufficient to demonstrate that the force used was actually excessive—whether the use of force occurred before or after *Martin*. We also hold that the scope of the right to be free from excessive non-deadly force that was "clearly established" in this circuit prior to *Martin* (Sept. 29, 1987) was defined by *Norris* (June 22, 1984). Because Hunter's complaint alleges conduct coming between *Norris* and *Martin*, his claim is subject to the officer's substantively distinct qualified immunity defense that arises from the change in the "clearly established" right to be free from the use of force, and the substantive adequacy of his complaint must be judged using the *Norris* standard.

## IV. CONCLUSION

We affirm the judgment of the district court dismissing Hunter's common law

claims and his § 1983 claim against the District of Columbia. In view of the uncertainties canvassed in Part III of this opinion, we reverse the dismissal of the § 1983 claim against the defendant police officer, and remand that claim to the district court with instructions to allow Hunter to replead.

*So ordered.*