Angelique CLARKE, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

Civ. A. No. 94–0153 (JR).

United States District Court,
District of Columbia.

Oct. 11, 1995.

Karen A. Newton, Reno & Cavanaugh, Washington, DC, Norman G. Schneider, Kamerow & Kamerow, P.C., Washington, DC, for Plaintiff.

Daniel Van Horn, Assistant U.S. Attorney, U.S. Attorney for the District of Columbia, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff brought this action for damages arising from an early morning warrantless entry and search of her apartment by law enforcement officers. She asserts claims against the United States under the Federal Tort Claims Act for trespass, assault, unlawful detention, infliction of emotional distress and invasion of privacy; and against the United States and five individual Deputy U.S. Marshals for "constitutional tort" pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1]

---

1. Plaintiff's claim against a sixth individual defendant, a member of the D.C. Metropolitan Po-lice Department, has been dismissed.

Before me are a motion of the federal defendants to dismiss the *Bivens* action [# 19], a later motion of the United States, filed after the completion of discovery, for summary judgment as to the remaining counts [# 35]; and a still later motion by plaintiff for leave to amend her complaint [# 38].

## FACTS

On November 19, 1992, plaintiff Angelique Clarke, an individual of Jamaican descent, resided at 1702 Summit Place, N.W., Apartment 207, Washington, D.C.

In October 1992, a law enforcement task force was established to apprehend fugitives wanted for sex offenses. Among the fugitives sought was one Godfrey Clarke. Members of the task force had been told by Clarke's ex-wife that the 1700 block of Summit Place, N.W. was one of the areas Godfrey Clarke was known to frequent. On November 17, 1992, a credit check on Mr. Clarke yielded six-month-old information that his address was 1702 Summit Place, N.W. On that same day, members of the task force went to 1702 Summit Place, N.W. They saw the name "Clarke" on the mailbox for Apartment 207. They showed the resident manager of the apartment building a photograph of Godfrey Clarke; he was unable to say for certain whether or not he had seen Godfrey Clarke coming or going from the building. The Marshals saw the lease for Apartment 207 and learned that it was leased to Angelique Clarke; Godfrey Clarke's name was not on the lease.

On November 19, 1992, at approximately 6:00 a.m., five Deputy U.S. Marshals and one D.C. Policeman went to the door of Apartment 207, knocked loudly, and requested entry. Plaintiff Angelique Clarke answered the knock but did not open the door. She spoke through the door to one of the Deputy Marshals for a number of minutes before consenting to open the door to admit one of them. As the first Marshal stepped inside the apartment, plaintiff attempted to close the door behind him, but he held the door open so that two other Marshals could also enter.

What happened next is characterized by defendants as a "security sweep of the apart- ment ... a quick visual check of those areas of the apartment where a person would be hiding ... performed for the protection of the law enforcement personnel in the apartment." Plaintiff called it a "search of her apartment," in which "one [Deputy Marshal] went into the bathroom and opened the shower curtain, another went into the kitchen, and yet another went to the bedroom and looked in plaintiff's closet and under her bed."

Then, according to plaintiff, she was "interrogated, ... verbally and physically intimidated, ... placed ... in fear for her safety, ... made to understand that she was not free to leave, ... and threatened [with] arrest." Amended complaint at ¶ 9. Moreover, the Marshals "refused to leave when asked, took and withheld her identification, seized a telephone from her when she attempted to call her sister, and turned the telephone ringer off." *Id.* Still further, one or more of the Deputy Marshals "taunted her, accused her of being guilty of harboring a felon, accused her of non-cooperation, and otherwise acted to increase her distress." *Id.*

Plaintiff denied any relationship with or knowledge of Godfrey Clarke. She told the officers that she did not recognize Mr. Clarke from a photograph. None of the law enforcement officers displayed any firearms or weapons, and none of them told plaintiff that she could not leave the apartment.

## ANALYSIS

■ The government's motion to dismiss the *Bivens* claim (Count VI of the Amended Complaint) must be granted. This conclusion does not rest on the heightened pleading standard advanced by the government, but is rather compelled because undisputed facts confirm the government's assertion that the federal defendants are entitled to protection on qualified immunity grounds. This conclusion is compelled by *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), in which the Supreme Court declined "to make an exception to the general rule of qualified immunity for cases involving allegedly unlawful warrantless searches of innocent third parties' homes in search of fugi-

tives," 483 U.S. at 645, 107 S.Ct. at 3042. *Anderson* was analyzed and followed closely in *Martin v. Malhoyt,* 830 F.2d 237 (D.C.Cir. 1987). See also *Hunter v. District of Columbia,* 943 F.2d 69 (D.C.Cir.1991); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991).

Based upon the information possessed by the searching officials, I find that it was "objectively legally reasonable" to conclude that the search of Apartment 207 was supported both by probable cause (the expectation that Godfrey Clarke was there) and by exigent circumstances (the need for a protective sweep). *Anderson, supra,* 483 U.S. at 641, 107 S.Ct. at 3040.

If, however, the officers trespassed in the course of their stormy visit to Apartment 207, by failing to leave when plaintiff revoked her consent, or if, by their presence in numbers, they created the imminent apprehension of harmful or offensive contact, or if, while present on the premises, they negligently committed any of the other torts that are charged in Counts I through V of the complaint, the qualified immunity afforded to the law enforcement officers in their individual capacities will not operate to immunize the United States from liability under general tort principles.

The motion for leave to amend filed by the plaintiff on August 2, 1995 is mooted by this analysis. Plaintiff asserts in her motion that the purpose of the proposed amendment is to add more detail to her complaint in order to satisfy the heightened pleading standard invoked by the government, but my ruling dismissing Count VI does not rely upon that standard. The facts plaintiff seeks to add to her complaint may be the subject of proof at trial without the need for amendment. An appropriate order accompanies this memorandum.

### ORDER

For the reasons stated in the memorandum issued today, it is this 10th day of October 1995 **ORDERED**

1. The motion of federal defendants to dismiss Count VI of the complaint [# 19] is **granted.**

2. The motion of defendant United States for summary judgment [# 30] is **denied.**

3. The motion of plaintiff to amend the complaint [# 38] is **denied.**

4. A status conference is set for 4 p.m. on October 23 for the purpose of reviewing outstanding discovery issues, scheduling a pretrial conference, and setting a trial date.