Michael PARKER, et al., Plaintiffs,

v.

The GRAND HYATT HOTEL,
et al., Defendants.

No. CIV.A.98–2453 (RMU).

United States District Court,
District of Columbia.

Sept. 18, 2000.

Donald Melvin Temple, Washington, DC, Edward Joseph Connor, Vallario & Collins, Suitland, MD, for Plaintiffs.

John Carter Lynch, Macleary, Lynch, Gregg & Lynch, P.C., Washington, DC, Charlotte Anne Bradley, Office of Corp. Counsel, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting in Part and Denying in Part the Defendants' Motions for Summary Judgment

### I. INTRODUCTION

Plaintiffs Michael Parker and Yvette Robinson Parker (the "plaintiffs" or the "Parkers"), common-law husband and wife, filed the instant action against The Hyatt Corporation, Square 345 Limited Partnership, Centerock Limited Partnership, Washrock Realty Associates and Mr. Russell Ricalde (collectively, "Hyatt" or the "Hyatt defendants"), as well as the District of Columbia and Metropolitan Police Department Officers Darnell Houston and Hector Lugo ("D.C." or the "D.C. defendants"). The plaintiffs assert claims for negligent supervision, intentional infliction of emotional distress, conversion, excessive force, false arrest and imprisonment, malicious prosecution, conspiracy, negligent in-

fliction of emotional distress and violation of 42 U.S.C. § 1981. The Hyatt and D.C. defendants move for summary judgment.

For the following reasons, the court will: (a) grant the defendants' motions for summary judgment on the counts of negligent supervision, conspiracy and violation of 42 U.S.C. § 1981; (b) deny the defendants' motions for summary judgment on the counts of conversion, excessive force, false arrest and imprisonment, and malicious prosecution; and (c) grant the defendants' motions for summary judgment on the counts of intentional infliction of emotional distress and negligent infliction of emotional distress with respect to Ms. Parker only.

## II. BACKGROUND

This case arose from events that transpired on July 6, 1997, when the plaintiffs dined at the Grand Slam Restaurant at the Grand Hyatt Hotel in Washington, D.C. Upon entering the restaurant, the plaintiffs sat at a table, and Mr. Parker, a paraplegic, moved from his wheelchair to a chair at the table. See Hyatt's Mot. for Summ. J. at 1; D.C.'s Mot. for Summ. J. at 1; Opp'n to Mot. for Summ. J. at 3. Shortly thereafter, the plaintiffs noticed an eyeglass case that a previous restaurant patron had left, either at the table at which the plaintiffs were seated or at a nearby table. The plaintiffs moved the eyeglass case, either close to Mr. Parker or into the pouch on Mr. Parker's wheelchair. See Hyatt's Mot. for Summ. J. at 1; D.C.'s Mot. for Summ. J. at 1–2; Opp'n to Mot. for Summ. J. at 3. The plaintiffs' waitress, Ms. Anita Garner, saw the plaintiffs' actions and summoned the Assistant Director of Hyatt Security, Russell Ricalde, who approached the plaintiffs. Mr. Ricalde asked if the plaintiffs had the eyeglass case, and the plaintiffs handed it over. See Hyatt's Mot. for Summ. J. at 2–3; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 3–4.

Mr. Parker then became agitated that Mr. Ricalde had approached him, and Mr. Ricalde and Mr. Parker exchanged words. Mr. Parker's tenor during this exchange is in dispute. Mr. Ricalde then called for additional security. See Hyatt's Mot. for Summ. J. at 4–5; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 4–5. The plaintiffs and the Hyatt defendants disagree about whether Hyatt security asked the plaintiffs to leave the restaurant and the plaintiffs refused to comply, or whether Hyatt security never asked the plaintiffs to leave. Hyatt security then withdrew from the scene, leaving the plaintiffs at the table, and called for the Metropolitan Police Department. See Hyatt's Mot. for Summ. J. at 5–6; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 5.

Shortly thereafter, officers Darnell Houston and Hector Lugo arrived at the scene. The officers briefly questioned Mr. Ricalde, and then approached the plaintiffs' table and asked them to leave the restaurant. The parties differ on what happened next. The plaintiffs state that Mr. Parker agreed to leave and told the officers that he needed his wife's assistance in transferring him back to his wheelchair, but that before she could help him the officers violently grabbed him, put him in a choke-hold, and struck him. See Opp'n to Mot. for Summ. J. at 5–6. The plaintiffs assert that the officers then dropped him to the ground and kicked him. See Opp'n to Mot. for Summ. J. at 6.

In contrast, the Hyatt defendants claim that Mr. Parker refused to leave the premises voluntarily, so the officers attempted to move Mr. Parker to his wheelchair. The D.C. defendants claim that Mr. Parker agreed to leave and asked the officers to help him into his wheelchair. See Hyatt's Mot. for Summ. J. at 6–7; D.C.'s Mot. for Summ. J. at 3. According to both defendants, while the police were in the process of lifting Mr. Parker, he began to violently resist them, which made it impossible to move him to the wheelchair. The D.C. defendants claim that, upon being struck by Mr. Parker, officer Lugo

stepped back, and because officer Houston could not hold Mr. Parker by himself, Mr. Parker was dropped to the ground accidentally. The Hyatt defendants claim that, upon violent resistance from Mr. Parker, the officers placed him back in the dining chair, but that Mr. Parker purposely slid to the ground and complained of injuries. *See* Hyatt's Mot. for Summ. J. at 7–8; D.C.'s Mot. for Summ. J. at 3.

At this point someone called for an ambulance, and when it arrived, Mr. Parker was taken to George Washington Hospital, where he was treated for alleged pain and abrasions. *See* Hyatt's Mot. for Summ. J. at 8; Opp'n to Mot. for Summ. J. at 6. After his discharge from the hospital, Mr. Parker was taken to the police station and was charged with unlawful entry and disorderly conduct. Ultimately, Mr. Parker was not convicted of the charges. According to the plaintiffs, the charges were dismissed, while the defendants maintain that the proceedings were "no-papered."[1] *See* Hyatt's Mot. for Summ. J. at 8; Opp'n to Mot. for Summ. J. at 8.

On October 15, 1998, the plaintiffs filed their complaint, which they have twice amended. The second amended complaint contains nine counts, asserting claims for: 1) negligent supervision, against D.C. and Hyatt; 2) intentional infliction of emotional distress, against D.C., Hyatt and Mr. Ricalde; 3) conversion, against Hyatt and Mr. Ricalde; 4) excessive force in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 5) false arrest and imprisonment in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 6) malicious prosecution in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 7) conspiracy in violation of 42 U.S.C. § 1983, against Mr. Ricalde and Officers Houston and Lugo; 8) negligent infliction of emotional distress, against D.C., Hyatt and Mr. Ricalde; and 9) violation of 42 U.S.C. § 1981, against Hyatt and

Mr. Ricalde. *See* Second Am. Compl. ¶¶ 28–67.

Defendants Hyatt and D.C. filed separate motions for summary judgment, to which the plaintiffs responded with one opposition. The defendants then filed separate replies.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus those that might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party must establish that there are no genuine issues of material fact and that the non-moving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the non-moving party as true and must draw all justifiable inferences in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the non-moving party to establish "the mere existence of a scintilla of evidence in support

1. In other words, the defendants claim that the prosecutor entered a *nolle prosequi,* which

amounts to a formal abandonment of the action.

of the [non-moving party's] position ...; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. Hyatt's Motion for Summary Judgment

### 1. Statute of Limitations

In its motion for summary judgment, Hyatt argues that the plaintiffs' claims of negligent supervision, intentional infliction of emotional distress, conversion, excessive force, false arrest and imprisonment, malicious prosecution and violation of 42 U.S.C. § 1981 are intentional tort claims that the plaintiffs have masked as sections 1981 and 1983 claims to avoid the one-year statute of limitations applicable to intentional tort claims under local District of Columbia law. *See* Hyatt's Mot. for Summ. J. at 21–22. Specifically, Hyatt contends that the plaintiffs' action arises from an alleged assault and battery, false arrest and malicious prosecution, that each of these are common-law claims that have a one-year statute of limitations under D.C.Code section 12–301, and that plaintiffs cannot rename their common-law claims as section 1983 claims to avoid the statute of limitations. *See id.* Hyatt cites *Maddox v. B.A. Bano*, 422 A.2d 763 (D.C.1980), in which the court held that the plaintiff's negligence claim was barred by a one-year statute of limitations because the substance of the plaintiff's complaint pled the intentional torts of assault and battery and false arrest. *See* Hyatt's Mot. for Summ. J. at 21–22. Hyatt also contends that an intentional infliction of emotional distress claim is clearly barred by the District of Columbia's one-year statute of limitations. *See id.* at 22.

The plaintiffs maintain that a number of their state-law claims also amount to constitutional claims, and are therefore "cog-nizable" under section 1983. *See* Second Am. Compl. at 11–17. In their counts of excessive force, false arrest and imprisonment, malicious prosecution and conspiracy, the plaintiffs contend that the defendants violated the plaintiffs' constitutional rights to be free from unreasonable and unlawful seizure, and to be free from arbitrary and unreasonable action under the Fourth, Fifth and Fourteenth amendments to the Constitution. *See id.*

Accordingly, the plaintiffs argue that their claims of excessive force, false arrest, malicious prosecution, conspiracy and violation of 42 U.S.C. § 1981 are governed by the District of Columbia's three-year residual statute of limitations, which is codified at D.C.Code § 12–301(8). *See* Opp'n to Mot. for Summ. J. at 11. In addition, the plaintiffs claim that their four common-law claims of negligent supervision, intentional infliction of emotional distress, conversion and negligent infliction of emotional distress are not specifically mentioned in D.C.Code section 12–301(4), which provides a one-year limitation for claims of libel, slander, assault, battery, mayhem, wounding, malicious prosecution and false arrest or false imprisonment. *Id.* at 9. Thus, the plaintiffs contend that D.C.Code § 12–301(8)'s residual three-year limitation for claims "for which a limitation is not otherwise specifically provided" should apply to their common law claims. *See* Opp'n to Mot. for Summ. J. at 9.

Lastly, the plaintiffs maintain that the limitations period for their intentional infliction of emotional distress count should be determined on a case-by-case basis, by which the court reviews whether factors other than a specific assault and battery caused the emotional distress. In this case, the plaintiffs allege that their emotional distress was caused not only by the assault and battery, but also by the defendants' allegedly ongoing tort of malicious prosecution. The plaintiffs contend that the limitations period for an ongoing tort does not begin to run until after the tortious activity has ceased. *See* Opp'n to

Mot. for Summ. J. at 10. The plaintiffs assert that this count of their complaint is based on a "pattern of conduct" that did not cease until February 25, 1998, the date on which the second of the charges against Mr. Parker was dropped. Accordingly, the court concludes that even a one-year statute of limitations would be satisfied, because the instant case was filed on October 15, 1998.

As for Hyatt's argument that the plaintiffs' section 1983 claims should be treated as common-law intentional torts, Hyatt's reliance on the D.C. Court of Appeals's decision in *Maddox v. B.A. Bano* is misplaced. In *Maddox*, the court held that the plaintiff's negligence claim should be treated as one for assault and battery because the plaintiff insufficiently pled his claim for *negligence*, and because the "substance" of the plaintiff's complaint pled the torts of assault and battery. *See Maddox*, 422 A.2d at 764–765. Thus, *Maddox* sheds no light on which statute of limitations provision should apply to a section 1983 claim for which there is an available state claim and remedy.

 The Supreme Court has held that a section 1983 claim may be brought directly to federal court even though an adequate state remedy exists and that state remedies need not first be exhausted. *See Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 493, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled o.g. by Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). But section 1983 does not, in and of itself, provide any substantive basis for a claim or for relief. Rather, it is a procedural device by which a plaintiff may bring a claim for relief based on the deprivation of, or infringement on, a federal constitutional right or statutory right. Thus, a plaintiff who asserts a claim under section 1983 must allege an independent substantive basis for the claim. *See Chapman v.*

*Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Schwartzberg v. Califano*, 480 F.Supp. 569, 573 (S.D.N.Y.1979). Here, the plaintiffs have alleged violations of the Fourth, Fifth and Fourteenth Amendments in their claims of excessive force, false arrest and imprisonment, malicious prosecution and conspiracy, thereby satisfying the pleading requirement under *Chapman. See Chapman*, 441 U.S. at 617–18, 99 S.Ct. 1905. Accordingly, the court need not treat the plaintiffs' section 1983 claims as intentional tort claims as a matter of law merely because corresponding state remedies exist.

 As the plaintiffs correctly contend, where a section 1983 claim overlaps with a state-law claim, the proper statute of limitations is the general or residual limitations period. *See Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In *Owens*, the Supreme Court reasoned that it is inappropriate to apply the statute of limitations for the "limited category" of intentional torts, given the broad scope of section 1983. *See id.* at 249, 109 S.Ct. 573. In this case, D.C.Code § 12–301(8)'s three-year limitations period serves as the residual statute of limitations that applies to the plaintiffs' section 1983 claims. Thus, the court holds that the plaintiffs filed their section 1983 claims of excessive force, false arrest, malicious prosecution and conspiracy well within the applicable three-year limitations period.

 Hyatt also argues that the claims for negligent supervision, intentional infliction of emotional distress, conversion and negligent infliction of emotional distress are barred by the one-year statute of limitations under D.C.Code § 12–301(4). *See* Hyatt's Mot. for Summ. J. at 21–22. The court disagrees. This provision sets a one-year statute of limitations for claims of "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment." Because the

plaintiffs' claims are not enumerated in D.C.Code § 12–301(4), the court holds that the three-year residual limitations period also applies to these four claims. *See* D.C.Code § 12–301(8); *Forte v. Goldstein,* 461 A.2d 469, 472 (D.C.1983) ("The statute of limitations governing an action for conversion is three years."); *Hunter v. D.C.,* 943 F.2d 69, 73 (D.C.Cir.1991) (holding that the three-year residual statute of limitations governs claims for negligent supervision, even if the negligence results in an intentional tort), *overruled o.g. by Atchinson v. D.C.,* 73 F.3d 418 (D.C.Cir.1996).

■ Moreover, D.C.Code § 12–301(4) does not specifically mention intentional or negligent infliction of emotional distress. This does not mean, however, that these two claims are automatically governed by the three-year residual statute of limitations. The plaintiffs properly cite *Hunter, supra,* and *Saunders v. Nemati,* 580 A.2d 660 (D.C.1990), which both hold that the appropriate statute of limitations for a claim of intentional infliction of emotional distress is the one that applies to the underlying claim. Thus, if the claim of intentional infliction of emotional distress is "intertwined" with a tort enumerated under D.C.Code § 12–301(4) (one-year limitation), such as assault or battery, the one-year limitation also will govern the intentional infliction of emotional distress claim. Otherwise, the three-year D.C.Code § 12–301(8) limitation applies. *See Saunders,* 580 A.2d at 665; *Hunter,* 943 F.2d at 72. This rule applies to claims for negligent infliction of emotional distress as well. *See Hawkins v. Greenfield,* 797 F.Supp. 30, 34 (D.D.C.1992).

In this case, Hyatt argues that the plaintiffs' emotional-distress claims are based on an alleged assault and battery, and therefore are barred by the one-year statute of limitations applicable to claims of

assault and battery. *See* Hyatt's Mot. for Summ. J. at 21–22. The plaintiffs counter that the emotional distress is attributable not only to the physical injuries Mr. Parker sustained, but also to the defendant police officers' alleged malicious prosecution of Mr. Parker for disorderly conduct and unlawful entry. *See* Opp'n to Mot. for Summ. J. at 10–11.

■ According to D.C.Code § 12–301(4), malicious prosecution falls in the category of torts specified as having a one-year statute of limitations. It is well settled in this Circuit that the statute of limitations applicable to a claim for malicious prosecution begins to run when the underlying action against a plaintiff terminates, not when the underlying action is initiated. *See Shulman v. Miskell,* 626 F.2d 173, 176 (D.C.Cir.1980). Here, the defendants did not drop the second charge against Mr. Parker until February 1998, and the instant case began on October 15, 1998. Furthermore, for the reasons discussed below in Part C, the plaintiffs' claim of malicious prosecution withstands the defendants' motions for summary judgment. Therefore, the court concludes that the plaintiffs' counts of intentional and negligent infliction of emotional distress are not barred by the statute of limitations. The court notes that the D.C. defendants also challenge the intentional infliction of emotional distress claim on statute of limitations grounds under D.C.Code section 12–301. Because the weight of authority regarding D.C.'s argument is not persuasive for the same reasons as Hyatt's argument, the court holds D.C.'s argument equally unavailing.

■ Based on the foregoing, the court concludes that none of the plaintiffs' claims are barred by the statute of limitations. *See* D.C.Code § 12–301 (1981).[2]

---

**2.** Hyatt also argues that this court lacks subject-matter jurisdiction over the plaintiffs' state-law claims because the plaintiffs have failed to set forth sufficient facts to support federal-question jurisdiction under sections

1981 and 1983. *See* Hyatt's Mot. for Summ. J. at 22–23. Because this court's jurisdiction over the plaintiffs' section 1983 claims withstands Hyatt's motion for summary judgment, the court need not reach the question of sub-

## 2. Count VII (Conspiracy)

■ Hyatt argues that the plaintiffs have failed to set forth sufficient facts to support their conspiracy claim against Mr. Ricalde. *See* Hyatt's Mot. for Summ. J. at 10–14. Hyatt further contends that in order to impose liability on a private individual such as Mr. Ricalde, the plaintiffs must show that the private individual willingly worked with law enforcement officials to deprive the plaintiff of a constitutionally protected right. Hyatt maintains that the plaintiffs have failed to make this showing, *see id.* at 10–11, and the court agrees.

■ Section 1983 imposes liability only on those who act under color of law to deprive another of her rights. *See* 42 U.S.C. § 1983. Liability for conspiracy under section 1983, though, may be imposed on a private individual or party who acts in concert with the party or parties who are acting under color of law. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The Supreme Court held in *Dennis* that liability for conspiracy may be imposed on a private individual if the plaintiff establishes that the private individual was "a willful participant in joint action with the State or its agents." *Id.* at 27–28, 101 S.Ct. 183. If the private individual was jointly engaged with state officials, then the individual was acting "under color of law" for purposes of section 1983. *See id.* Moreover, because the conspiracy claim at bar is asserted under section 1983, the plaintiffs must show that the purpose of the alleged conspiracy was to deprive the plaintiffs of their constitutional rights. *See* 42 U.S.C. § 1983.

■ In this case, the court concludes that the plaintiffs have failed to state facts sufficient to plead a section 1983 conspiracy against Mr. Ricalde. While Mr. Ricalde called for police assistance, "calling the police, alone, does not establish joint action between the police and the private caller."

*See Bang v. Utopia Restaurant*, 923 F.Supp. 46, 49 (S.D.N.Y.1996) (citing *Newman v. Bloomingdale's*, 543 F.Supp. 1029 (S.D.N.Y.1982)). The plaintiffs have offered no evidence showing that Mr. Ricalde was involved in the police officers' decision to arrest and prosecute Mr. Parker.

■ The plaintiffs do allege, however, that Mr. Ricalde was involved in the use of excessive force against Mr. Parker. *See* Opp'n to Mot. for Summ. J. at 21. This assertion does not hold up. To establish a joint action between a private citizen and state officials, the plaintiffs must show that the two parties reached an agreement or understanding to deprive the plaintiffs of their constitutional rights. *See Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir.1991); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir.1983). Thus, even assuming *arguendo* that Mr. Ricalde participated in the officers' use of excessive force against Mr. Parker, the plaintiffs allege no facts that tend to show that Mr. Ricalde and the police officers reached a prior agreement or understanding to use excessive force or to otherwise deprive Mr. Parker of any constitutionally protected right. The court also notes that the plaintiffs do not cite Hyatt or Mr. Ricalde as culpable parties in the excessive-force count of their complaint. *See* Second Am. Compl. ¶¶ 41–45. Based on the foregoing, the court will dismiss the plaintiffs' conspiracy claim as to Hyatt and Mr. Ricalde.

## 3. Count IX (42 U.S.C. § 1981)

■ Hyatt argues that the plaintiffs' section 1981 claim cannot withstand a motion for summary judgment because the plaintiffs have not set forth specific facts demonstrating the necessary racial animus, and also because the plaintiffs' claim does not involve a right enumerated under

ject-matter jurisdiction over the plaintiffs' state-law claims, as they are properly before

this court under supplemental jurisdiction. *See* 28 U.S.C. § 1367.

42 U.S.C. § 1981. *See* Hyatt's Mot. for Summ. J. at 14–21. Section 1981 prohibits racial discrimination in making and enforcing contracts. *See, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Furthermore, a section 1981 plaintiff must be able to show that the alleged discrimination was purposeful. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

The plaintiffs, who are African–American, respond that they have shown purposeful discrimination against them by both the statement made by Officer Houston, who is also African–American, after Mr. Parker's alleged beating: "[T]hat's why we don't have nothing." *See* Opp'n to Mot. for Summ. J. at 26–28. The plaintiffs also point to Hyatt's so-called "banning book," a compilation of photographs and profiles of people whom Hyatt has banned from entering the hotel premises in the future. The book shows that Hyatt has not banned any white people from the hotel based on verbal disputes. *See id.* Neither of these assertions, even if true, is enough to justify an inference of purposeful racial discrimination for purposes of section 1981.

As far as the alleged statement made by Officer Houston, the plaintiffs have not shown that the statement, if Officer Houston even uttered it, was a reference to race. The plaintiffs do not assert that any explicit racial slur or epithet was uttered by Officer Houston. In addition, the fact that the hotel's banning book contains no evidence that a white person has been banned for verbal disputes or disorderly conduct fails to make the requisite showing that racial animus motivated the hotel security or police officers to infringe on the plaintiffs' constitutional rights.

Absent evidence that could support the inference that the defendants were motivated by racial animus toward the plaintiffs, the court need not decide whether the plaintiffs have demonstrated a violation of a right enumerated under section 1981. Furthermore, because the court concludes that the plaintiffs have not asserted facts sufficient to infer racial animus on the part of the defendants, the plaintiffs' section 1981 claim does not survive summary judgment.

## C. The District of Columbia's Motion for Summary Judgment

### 1. Count I (Negligent Supervision)

█ Regarding the negligent-supervision claim, the key question focuses on whether, in the District of Columbia, a claim for negligent supervision must be supported by expert testimony. *See generally, District of Columbia v. Davis*, 386 A.2d 1195 (D.C.1978). Because the plaintiffs have not identified any expert to support this claim, the D.C. defendants contend that under *Davis*, the negligent supervision count should be dismissed. *See* D.C.'s Mot. for Summ. J. at 14. The plaintiffs argue that the facts in *Davis* are too far removed from the facts in the instant case to justify D.C.'s reliance on *Davis*, in which the court held that expert testimony was required on the functioning of police firearms and weapons safety. The plaintiffs also refer to the deposition testimony of Mr. Ricalde, which, they argue, has a tendency to show that Hyatt did not adequately train Mr. Ricalde for his position. *See* Opp'n to Mot. for Summ. J. at 11–14.

█ The use of expert testimony is called for when "the subject dealt with is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman...." *See Waggaman v. Forstmann*, 217 A.2d 310, 311 (D.C.1966). In this case, expert testimony would be necessary to assist a jury in establishing the following: (a) the standard of care which Hyatt and the District of Columbia are subject to in the training of their security personnel and police officers; (b) whether the officers and Mr. Ricalde breached their duty of care; and (c) whether such breach contrib-

uted to the plaintiffs' damages. In *District of Columbia v. White,* the appellate court reversed the trial court's decision to allow a negligent supervision claim to go to a jury because there was no expert testimony establishing the standard of care for the training of police officers regarding weapons safety and protocol, and thus the jury could not intelligently consider whether the officers had departed from the standard of care. *See District of Columbia v. White,* 442 A.2d 159 (D.C.1982).

Following these precedents, the court concludes that the standards of police and security training relate to an occupation that is "beyond the ken of the average layman." A jury evaluating this count of negligent supervision, having only the facts and arguments submitted by the plaintiffs in front of them, would be forced to engage in "idle speculation" regarding the duty of care governing Hyatt and the District of Columbia in the training of their employees, and such speculation on the part of a jury is not permissible. *See Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 460–61 (D.C.1974) (citing *Kincheloe v. Safeway Stores, Inc.,* 285 A.2d 699, 701 (D.C.1972)). Thus, the court will not allow the plaintiffs' negligent-supervision count to go forward.

### 2. D.C.Code Section 12–309

■ Before filing a lawsuit against the District of Columbia for unliquidated damages, a claimant must file notice with the mayor within six months of the date of the alleged injury. *See* D.C.Code § 12–309. The D.C. defendants argue that Ms. Parker's common-law claims (negligent supervision, intentional infliction of emotional distress and negligent infliction of emotional distress, respectively) should be dismissed because she did not file a timely section 12–309 notice. *See* D.C.'s Mot. for Summ. J. at 15. The parties do not dispute that Mr. Parker timely filed his section 12–309 notice.

Relying on *Romer v. D.C.,* the plaintiffs argue that it is not necessary that a spouse file a separate notice as long as the other spouse has timely filed notice. *See* 449 A.2d 1097 (D.C.1982). This reliance on *Romer,* however, is misplaced. *Romer* held that a spouse need not file a separate notice for a *loss of consortium* claim. Nothing in *Romer* indicates that its holding was intended to apply to claims other than claims for loss of consortium. Here, the plaintiffs request damages for loss of consortium in their claims of negligent supervision and intentional and negligent infliction of emotional distress, but there is no independent count of loss of consortium contained in the complaint.

■ In the alternative, the plaintiffs assert that a written report by the Police Department is sufficient notice to satisfy D.C.Code section 12–309, and that the police filed a report that refers to Ms. Parker. *See* Opp'n to Mot. for Summ. J. at 14–15. This argument is also unavailing. A police report is sufficient as a section 12–309 notice only if the report specifies *all* the information that is required of a claimant's written notice. *See Miller v. Spencer,* 330 A.2d 250, 251–252 (D.C.1974). The information required of a claimant's written notice is the approximate time, place, cause and circumstances of the injury or damage. *See* D.C.Code § 12–309. In this case, the police report made out against Mr. Parker does not specify that Ms. Parker was present at the scene or that she was involved in the underlying events in any way. The police report only mentions Ms. Parker in the section in which the arresting officer lists the immediate relatives of the arrestee. *See* D.C.'s Mot. for Summ. J, Ex. 2, Police Report dated July 7, 1997. Thus, the police report did not adequately put the District of Columbia on notice of the possibility of Ms. Parker's claims of negligent supervision, intentional infliction of emotional distress or negligent infliction of emotional distress. As stated above, the court will dismiss the negligent-supervision count on other grounds. For the reasons set forth in this section, the court will dismiss the intentional and negligent

infliction of emotional distress counts with respect to Ms. Parker.

### 3. Police Immunity

The D.C. defendants argue that Officers Houston and Lugo are immune from liability under section 1983 because they had a reasonable belief in the lawfulness of their actions. *See* D.C.'s Mot. for Summ. J. at 7–8. The Supreme Court has held that government officials performing discretionary functions are immune from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

#### a. Count IV (Excessive Force)

The D.C. defendants cite *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), as setting out the test for determining whether qualified immunity is applicable to an excessive force claim. *See* D.C.'s Mot. for Summ. J. at 8. The plaintiffs counter that in *Graham* the Court specifically refused to address the issue of qualified immunity relating to excessive force claims. *See* Opp'n to Mot. for Summ. J. at 16. The Court stated in *Graham* that "[s]ince no claim of qualified immunity has been raised in this case ... we express no view on its proper application in excessive force cases.... " *See id.* at 399, 109 S.Ct. 1865. The standard that *Graham* sets out is that the force used to effect a seizure is reasonable if the officers' actions "are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

The plaintiffs also argue that qualified immunity is not available as a defense to an allegation of excessive force. *See* Opp'n to Mot. for Summ. J. at 15–16 (citing *Jackson v. Hoylman,* 933 F.2d 401, 402–03 (6th Cir.1991)). In *Jackson,* the court held that only a jury could resolve the factual question of whether the police had used exces-

sive force, a question which turns on the credibility of the parties, and thus is not properly decided on a motion for summary judgment. *Id.* The Sixth Circuit went on to conclude that because the test for excessive force and the test for qualified immunity both turn on the same objective-reasonableness standard, summary judgment must be denied. *See id.* at 402.

In this case, the parties disagree on the amount of force used in arresting Mr. Parker. The plaintiffs claim that the officers choked, kicked and punched Mr. Parker during the course of his arrest. *See* Opp'n to Mot. for Summ. J. at 6. The defendants deny that they used such force. For purposes of the defendants' motion for summary judgment, the court accepts the plaintiffs' version of the facts as true. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mr. Parker gave deposition testimony under oath that describes actions taken against him by the police which, if true, are sufficient to make out an excessive-force claim. *See* Opp'n to Mot. for Summ. J., Ex. 2. Based on these factors, the court concludes that there is a genuine factual dispute as to whether Officers Houston and Lugo used excessive force in arresting Mr. Parker. Consequently, the plaintiffs' claim of excessive force may proceed.

#### b. Count V (False Arrest)

To establish qualified immunity from a claim of false arrest, the police must first demonstrate that they had probable cause to arrest the plaintiff. *See Saidi v. Washington Metro. Area Transit Auth.,* 928 F.Supp. 21, 27 (D.D.C.1996). Here, Mr. Parker was arrested for unlawful entry and disorderly conduct. The D.C. defendants admit that Mr. Parker, "at one point," agreed to leave, and it was at that point that the officers attempted to move Mr. Parker into his wheelchair. *See* D.C.'s Mot. for Summ. J. at 3. The time at which Mr. Parker became disorderly is in dispute—the defendants claim that Mr.

Parker was loud and belligerent prior to being dropped to the ground, and the plaintiffs claim that it was only after being dropped that he used profanity and raised his voice. *See* D.C.'s Mot. for Summ. J. at 3, Opp'n to Mot. for Summ. J. at 5–6. Based on this material factual dispute, the court concludes that reasonable fact-finders could differ as to whether probable cause existed for Mr. Parker's arrest. Accordingly, the plaintiffs' false arrest claim withstands the D.C. defendants' motion.

### c. Count VI (Malicious Prosecution)

 Similarly, to establish qualified immunity from a claim for malicious prosecution, the police must demonstrate that they had probable cause to arrest the plaintiff. There is no material distinction between probable cause for detention in the false arrest or imprisonment context and probable cause in the malicious prosecution context. *See Saidi*, 928 F.Supp. at 27. Because the court concludes that there is a genuine question as to whether the police had probable cause to arrest Mr. Parker, the same holds true for the malicious prosecution count. Thus, the plaintiffs' malicious-prosecution claim withstands D.C.'s motion.

### d. Count VII (Conspiracy)

 Finally, to prevail on a conspiracy claim, the plaintiff must show that there was an agreement between two or more people to participate in an unlawful act or in a lawful act in an unlawful manner. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983). In this case, the plaintiffs have asserted no facts or evidence which, if true, would show that Officers Houston and Lugo formed an agreement to purposely violate the rights of the plaintiffs. Accordingly, the plaintiffs' count of conspiracy will be dismissed with respect to the D.C. defendants.

### IV. CONCLUSION

For the reasons stated above, the counts of negligent supervision (Count I), conspir-acy (Count VII) and violation of 42 U.S.C. § 1981 (Count IX) will be dismissed in their entirety, and the counts of intentional infliction of emotional distress (Count II) and negligent infliction of emotional distress (Count VIII) will be dismissed with respect to Ms. Parker only.

The counts of intentional infliction of emotional distress (Count II), conversion (Count III) and negligent infliction of emotional distress (Count VIII) stand against defendant Hyatt, and the counts of intentional infliction of emotional distress (Count II), excessive force (Count IV), false arrest and imprisonment (Count V), malicious prosecution (Count VI) and negligent infliction of emotional distress (Count VIII) stand against defendant D.C. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this ___ day of September, 2000.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting in Part and Denying in Part the Plaintiffs' Motion to Amend Partial Summary Judgment; Granting in Part and Denying in Part Defendant Hyatt's Motion for Clarification**

### I. INTRODUCTION

Plaintiffs Michael Parker and Yvette Robinson Parker ("the plaintiffs" or the "Parkers"), common-law husband and wife, filed the instant action against The Hyatt Corporation, Square 345 Limited Partnership, Centerock Limited Partnership, Washrock Realty Associates, and Mr. Russell Ricalde (collectively, "Hyatt" or "defendant Hyatt"), as well as the District of Columbia and Metropolitan Police Department Officers Darnell Houston and Hector Lugo ("D.C." or "defendant D.C."). The plaintiffs asserted claims for negligent supervision, intentional infliction of emotional distress, conversion, excessive force, false arrest and imprisonment, malicious prosecution, conspiracy, negligent infliction of

emotional distress and violation of 42 U.S.C. § 1981. The Hyatt and D.C. defendants moved for summary judgment.

In a Memorandum Opinion issued September 18, 2000 ("Mem.Op."), the court: (a) granted the defendants' motions for summary judgment on the counts of negligent supervision, conspiracy and violation of 42 U.S.C. § 1981; (b) denied the defendants' motions for summary judgment on the counts of conversion, excessive force, false arrest and imprisonment, and malicious prosecution; and (c) granted the defendants' motions for summary judgment on the counts of intentional infliction of emotional distress and negligent infliction of emotional distress with respect to Ms. Parker only. Mr. Parker's emotional-distress claims survived summary judgment.

The instant matter comes before the court on the plaintiffs' motion to amend partial summary judgment. Specifically, the plaintiffs seek to have the court's September 18 Order amended so as to limit the dismissal of Mrs. Parker's emotional-distress claims to defendant D.C. only. See Pl.'s Mot. to Amend Partial Summ. J. ("Pl.'s Mot.") at 2. The plaintiffs argue that Mrs. Parker should be allowed to pursue her emotional-distress claims against defendant Hyatt.[1] See id. In its opposition, defendant Hyatt seeks a clarification of the September 18 Order. Defendant Hyatt contends that the plaintiffs have alleged malicious prosecution only against defendant D.C., and since the plaintiffs' emotional-distress claims arise out of the alleged malicious prosecution, the plaintiffs cannot press emotional-distress claims against defendant Hyatt. See Def.'s Opp'n to Pl.'s Mot. to Amend Partial Summ. J. and Request for Clarification ("Def.'s Opp'n") at 2–3.

The court notes that the parties are now raising arguments they did not raise in their summary judgment filings. Since the issues raised merit consideration and resolution, the court will decide them in this Memorandum Opinion. For the reasons that follow, the court will grant in part and deny in part both the plaintiffs' motion and defendant Hyatt's opposition and request for clarification.

## II. BACKGROUND

This case arose from events that transpired on July 6, 1997, when the plaintiffs dined at the Grand Slam Restaurant at the Grand Hyatt Hotel in Washington, D.C. Upon entering the restaurant, the plaintiffs sat at a table, and Mr. Parker, a paraplegic, moved from his wheelchair to a chair at the table. See Hyatt's Mot. for Summ. J. at 1; D.C.'s Mot. for Summ. J. at 1; Opp'n to Mot. for Summ. J. at 3. Shortly thereafter, the plaintiffs noticed an eyeglass case that a previous restaurant patron had left, either at the table at which the plaintiffs were seated or at a nearby table. The plaintiffs moved the eyeglass case, either close to Mr. Parker or into the pouch on Mr. Parker's wheelchair. See Hyatt's Mot. for Summ. J. at 1; D.C.'s Mot. for Summ. J. at 1–2; Opp'n to Mot. for Summ. J. at 3. The plaintiffs' waitress, Ms. Anita Garner, saw the plaintiffs' actions and summoned the Assistant Director of Hyatt Security, Russell Ricalde, who approached the plaintiffs. Mr. Ricalde asked if the plaintiffs had the eyeglass case, and the plaintiffs handed it over. See Hyatt's Mot. for Summ. J. at 2–3; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 3–4.

Mr. Parker then became agitated that Mr. Ricalde had approached him, and Mr. Ricalde and Mr. Parker exchanged words.

---

**1.** Defendant D.C. also filed an opposition to the plaintiffs' motion to amend partial summary judgment, in which it argued that the court's previous holding that Mrs. Parker's emotional-distress claims cannot proceed against defendant D.C. should also mean these claims cannot proceed against the two police officer defendants, Officers Darnell Houston and Hector Lugo. See Opp'n of Def. D.C., Houston, and Lugo. Since the officers were acting within the scope of their employment during the incident, the court agrees with defendants D.C., Houston, and Lugo on this point.

Mr. Parker's tenor during this exchange is in dispute. Mr. Ricalde then called for additional security. *See* Hyatt's Mot. for Summ. J. at 4–5; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 4–5. The plaintiffs and the Hyatt defendants disagree about whether Hyatt security asked the plaintiffs to leave the restaurant and the plaintiffs refused to comply, or whether Hyatt security never asked the plaintiffs to leave. Hyatt security then withdrew from the scene, leaving the plaintiffs at the table, and called for the Metropolitan Police Department. *See* Hyatt's Mot. for Summ. J. at 5–6; D.C.'s Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 5.

Shortly thereafter, officers Darnell Houston and Hector Lugo arrived at the scene. The officers briefly questioned Mr. Ricalde, and then approached the plaintiffs' table and asked them to leave the restaurant. The parties differ on what happened next. The plaintiffs state that Mr. Parker agreed to leave and told the officers that he needed his wife's assistance in transferring him back to his wheelchair, but that before she could help him the officers violently grabbed him, put him in a choke-hold, and struck him. *See* Opp'n to Mot. for Summ. J. at 5–6. The plaintiffs assert that the officers then dropped him to the ground and kicked him. *See* Opp'n to Mot. for Summ. J. at 6.

In contrast, the Hyatt defendants claim that Mr. Parker refused to leave the premises voluntarily, so the officers attempted to move Mr. Parker to his wheelchair. The D.C. defendants claim that Mr. Parker agreed to leave and asked the officers to help him into his wheelchair. *See* Hyatt's Mot. for Summ. J. at 6–7; D.C.'s Mot. for Summ. J. at 3. According to both defendants, while the police were in the process of lifting Mr. Parker, he began to violently resist them, which made it impossible to move him to the wheelchair. The D.C. defendants claim that, upon being struck by Mr. Parker, officer Lugo stepped back, and because officer Houston could not hold Mr. Parker by himself, Mr. Parker was dropped to the ground accidentally. The Hyatt defendants claim that, upon violent resistance from Mr. Parker, the officers placed him back in the dining chair, but that Mr. Parker purposely slid to the ground and complained of injuries. *See* Hyatt's Mot. for Summ. J. at 7–8; D.C.'s Mot. for Summ. J. at 3.

At this point someone called for an ambulance, and when it arrived, Mr. Parker was taken to George Washington Hospital, where he was treated for alleged pain and abrasions. *See* Hyatt's Mot. for Summ. J. at 8; Opp'n to Mot. for Summ. J. at 6. After his discharge from the hospital, Mr. Parker was taken to the police station and was charged with unlawful entry and disorderly conduct. Ultimately, Mr. Parker was not convicted of the charges. According to the plaintiffs, the charges were dismissed, while the defendants maintain that the proceedings were "no-papered."[2] *See* Hyatt's Mot. for Summ. J. at 8; Opp'n to Mot. for Summ. J. at 8.

On October 15, 1998, the plaintiffs filed their complaint, which they have twice amended. The second amended complaint contains nine counts, asserting claims for: 1) negligent supervision, against D.C. and Hyatt; 2) intentional infliction of emotional distress, against D.C., Hyatt and Mr. Ricalde; 3) conversion, against Hyatt and Mr. Ricalde; 4) excessive force in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 5) false arrest and imprisonment in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 6) malicious prosecution in violation of 42 U.S.C. § 1983, against Officers Houston and Lugo; 7) conspiracy in violation of 42 U.S.C. § 1983, against Mr. Ricalde and Officers Houston and Lugo; 8) negligent infliction of emotional distress, against D.C., Hyatt and Mr. Ricalde; and 9) violation of 42 U.S.C. § 1981, against Hyatt and

2. In other words, the defendants claim that the prosecutor entered a *nolle prosequi*, which amounts to a formal abandonment of the action.

Mr. Ricalde. *See* Second Am. Compl. ¶¶ 28–67.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The substantive law on which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus those that might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party must establish that there are no genuine issues of material fact and that the non-moving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the non-moving party as true and must draw all justifiable inferences in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the non-moving party to establish "the mere existence of a scintilla of evidence in support of the [non-moving party's] position ...; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Clarification and Amendment of the Court's September 18, 2000 Order

In the Memorandum Opinion and Order issued September 18, 2000, this court granted in part and denied in part defendant D.C.'s and defendant Hyatt's motions for summary judgment. In that decision, the court, among other things, dismissed Mrs. Parker's intentional and negligent infliction of emotional-distress claims (counts II and VIII). The court held that because Mrs. Parker had failed to notify the District of Columbia of her claim within six months of the alleged injury, as required under D.C.Code § 12–309, her emotional-distress claims were time-barred. *See* Mem. Op. at 13–14.

The plaintiffs now move to amend the court's Order. They argue that the portion of the decision disposing of Mrs. Parker's emotional-distress claims "limits itself to a discussion of District of Columbia Code Section 12–309 and various case authorities citing that section." *See* Pl.'s Mot. at 1–2. Moreover, the plaintiffs point out that section 12–309 applies to claims against the District of Columbia only and not to claims against private defendants. *See id.* at 2. Therefore, they contend, the court "should limit the dismissal of the female plaintiff's claims under Counts II and VIII to defendant District of Columbia *only.*" *Id.*

█ The court agrees with the plaintiffs that D.C.Code § 12–309 does not apply to private-sector defendants. The text of the statute itself reads, in pertinent part:

[A]n action may not be maintained against the District of Columbia for unliquidated damages .... unless, within 6 months after the injury or damage was sustained, the claimant .... has given notice in writing to the Mayor of the District of Columbia of the approximate

time, place, cause and circumstances of the injury or damage.

D.C.Code § 12–309 (1981). Moreover, nothing in the language of Section 12–309 or in any of the applicable case law suggests that the section's notice requirement applies to a claim against a private defendant such as defendant Hyatt. Accordingly, as the plaintiffs suggest, Mrs. Parker's emotional-distress claims could theoretically proceed against defendant Hyatt. But before determining which of her two emotional-distress claims may go forward, the court must first address defendant Hyatt's request for clarification of the September 18, 2000 Memorandum Opinion. See Def.'s Opp'n. at 1–3. As will be explained below, the court concludes that only her claim for negligent infliction of emotional distress against defendant Hyatt may proceed.

In its previous Opinion, the court ruled that no statute-of-limitations provision barred the plaintiffs' emotional-distress claims. See Mem. Op. at 5–10. In arriving at that conclusion, the court recognized that the emotional-distress claims are "intertwined" with the plaintiffs' claims of excessive force (count IV) and malicious prosecution (count VI). See Mem. Op. at 8–9. The plaintiffs made this same argument in their opposition to the motions for summary judgment. See Opp'n to Mot. for Summ. J. at 9–11.

In its instant opposition, defendant Hyatt argues that the court should dismiss the plaintiffs' emotional-distress claims against it altogether. Hyatt bases its reasoning on two facts: first, the plaintiffs' two emotional-distress claims grow out of the events giving rise to their claims of excessive force and malicious prosecution, and second, the plaintiffs' second amended complaint alleges these counts of excessive force and malicious prosecution against defendant D.C. *only.* See Def.'s Opp'n at 2–

3. Thus, Hyatt argues, the plaintiffs' emotional-distress claims arise from events that the plaintiffs themselves allege were caused by defendant D.C. alone. See Second Am. Compl. ¶¶ 41–45, 49–54.

The court finds defendant Hyatt's argument persuasive. The court should note, however, that, in concluding that the plaintiffs' emotional distress claims are "intertwined" with their claims of excessive force and malicious prosecution, the court did so for purposes of resolving a statute-of-limitations dispute between the parties. See Mem. Op. at 5–10. Because the statute-of limitations issue is distinct from the issue of which of the two emotional-distress claims applies to which of the two defendants in this case, the court will break down this Opinion to address clearly which claims may proceed against which defendants in this complicated matter.[3]

### 1. Mr. Parker's Emotional–Distress Claims Against Defendant District of Columbia

As the court noted in its Memorandum Opinion, the parties do not dispute that Mr. Parker timely satisfied the requirements of D.C.Code § 12–309 with respect to his claims against the District of Columbia. See Mem. Op. at 13. In addition, the complaint clearly alleges claims of intentional and negligent infliction of emotional distress, as well as claims of excessive force and malicious prosecution, against defendant D.C. See Second Am. Compl. ¶¶ 36, 45, 54, 62. Accordingly, both of Mr. Parker's emotional-distress claims against defendant D.C. remain intact.

### 2. Mrs. Parker's Emotional–Distress Claims Against Defendant District of Columbia

As the court concluded in its Memorandum Opinion, Mrs. Parker failed to timely

---

**3.** As noted above, the parties have raised new issues and clarified several points in their instant motions. Thus, to the extent that any of the following rulings do not conform with the section of the September 18 Memoran-

dum Opinion and Order dealing with the plaintiffs' emotional-distress claims, this Opinion should take precedence over the September 18 Memorandum Opinion and Order.

satisfy the requirements of D.C.Code § 12–309 with respect to her claims against the District of Columbia. *See* Mem. Op. at 13–14. Nothing raised in the instant motions affect that conclusion. Accordingly, both of Mrs. Parker's emotional-distress claims against defendant D.C. remain dismissed.

### 3. Mr. Parker's Emotional–Distress Claims Against Defendant Hyatt

 In their opposition to the defendants' motions for summary judgment, the plaintiffs argued that their *intentional* infliction of emotional distress claim is based upon the alleged events that gave rise to their claims of excessive force and malicious prosecution. *See* Opp'n to Mot. for Summ. J. at 9–11. As noted above, however, the second amended complaint alleges claims of excessive force and malicious prosecution only against defendant D.C. *See* Second Am. Compl. ¶¶ 45, 54. On the other hand, the plaintiffs did not argue in their opposition to the motions for summary judgment that their claim of *negligent* infliction of emotional distress arose from the alleged excessive force and malicious prosecution. Moreover, the second amended complaint's count VIII does not imply this line of reasoning. *See* Second Am. Compl. ¶¶ 59–62. Therefore, the court will allow Mr. Parker to proceed on his claim of *negligent* infliction of emotional distress against defendant Hyatt, but will dismiss his claim of *intentional* infliction of emotional distress with respect to defendant Hyatt.

### 4. Mrs. Parker's Emotional–Distress Claims Against Defendant Hyatt

For the same reasons as in Section 3 immediately above, the court will allow Mrs. Parker to proceed on her claim of *negligent* infliction of emotional distress against defendant Hyatt, but will dismiss her claim of *intentional* infliction of emotional distress with respect to defendant Hyatt.

## IV. CONCLUSION

For all of these reasons, the court grants in part and denies in part both the plaintiffs' motion to amend partial summary judgment and defendant Hyatt's opposition and request for clarification. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this ____ day of November 2000.