# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 3, 2008        Decided March 24, 2009

No. 07-7151

MARLIN GODFREY,
APPELLEE

v.

ALLEN IVERSON AND JASON KANE,
APPELLANTS

---

Consolidated with 07-7152, 07-7157

---

Appeals from the United States District Court
for the District of Columbia
(No. 05cv02044)

---

*William R. Martin* argued the cause for appellants/cross-appellees. With him on the briefs was *Alan C. Milstein. David A. Rosenberg* entered an appearance.

*Gregory L. Lattimer* argued the cause and filed the briefs for appellee/cross-appellant.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: In the early hours of July 20, 2005, a brawl erupted at the Eyebar, a Washington, D.C. nightclub. Among the injured was Marlin Godfrey, a patron in the Eyebar VIP area that night. He suffered a concussion, a ruptured eardrum, a burst blood vessel in his eye, a torn rotator cuff, various cuts and bruises, and emotional injuries. Godfrey sued Allen Iverson and his bodyguard, Jason Kane, both of whom were in the Eyebar VIP area that night. The amended complaint alleged that Kane and Terrance Williams, who also sometimes acted as Iverson's bodyguard, attacked him and directly caused his physical and emotional injuries, and that Iverson was negligent in failing to stop both men from injuring Godfrey. After a six-day trial, the jury returned a verdict in favor of Godfrey against Kane for assault and battery and intentional infliction of emotional distress, and against Iverson for negligent supervision of Kane, in the total amount of $260,000. In response to Iverson's and Kane's appeal, Godfrey filed what may be described as a conditional cross-appeal: if we order a new trial, he would like us to declare that several of the district court's evidentiary rulings were in error. The only issue warranting discussion is Iverson's contention that, absent expert testimony, the evidence was legally insufficient to support the verdict against him for negligent supervision.

Allen Iverson has played professional basketball since the Philadelphia 76ers drafted him in 1996. He now plays for the Detroit Pistons. He often hires bodyguards to accompany him when he attends public events. Iverson's manager Gary Moore was in charge of hiring the bodyguards and telling them when and where to work. Jason Kane has provided security for Iverson in the Washington, D.C. area for some time and was doing so during Iverson's charity weekend events in July 2005.

Iverson and several friends entered the Eyebar nightclub shortly after midnight, with Kane as his bodyguard. They went straight to the small VIP area of the club, where Marlin Godfrey and his party already had a table. Although accounts differed about how the fight started, the evidence indicated that an argument broke out between Godfrey and Williams, Kane's friend who sometimes worked as Iverson's bodyguard and happened to be in the club that night. Witnesses said that Kane and Williams loudly and aggressively ordered patrons, including Godfrey and his party, to leave the VIP area and make room for Iverson and his friends. Soon after Curtis Fitzgerald – an Eyebar security employee and friend of Kane's and Godfrey's – intervened to defuse the situation and move Godfrey's party to a different table, Kane shoved Fitzgerald and a group of others jumped in the attack. When Godfrey, who has significant martial arts training, walked toward the fracas to "help his friend" Fitzgerald, he was attacked and beaten until he became disoriented; he regained his senses in the club's storage room, where he had wandered to get away from the fight. Godfrey received treatment for his injuries that night in the George Washington Hospital emergency room and was released at noon that day.

Williams admitted that he took part in beating up Godfrey. Other witnesses testified that after Kane pushed Fitzgerald, they saw Kane jump into the fight and attack Godfrey, punching him, kicking him, and striking him in the head with a bottle. Iverson stayed out of the fray in the back corner of the VIP area, standing on a couch or bench and observing. He did not say or do anything to try to stop Kane or anyone else from fighting. There was no evidence that any of the club's patrons or employees attacked or threatened Iverson.

After the district court disposed of the defendants' motions for directed verdict, the case went to the jury with two claims

against Kane – assault and battery and intentional infliction of emotional distress – and two claims against Iverson for negligent supervision of Kane and Williams. The jury found Kane liable on both claims against him, and it found Iverson liable for negligently supervising Kane. As to Williams, the jury found that he was not working for Iverson that night. The jury awarded Godfrey $250,000 for pain and suffering and $10,000 for medical expenses. The district court upheld the verdict, rejecting the defendants' post-trial motions. *See Godfrey v. Iverson*, 503 F. Supp. 2d 363, 366 (D.D.C. 2007).

Liability for negligent supervision arises when an "employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001) (internal quotation marks and citation omitted). Iverson argues that the district court should have granted judgment as a matter of law on the negligent supervision claim because Godfrey did not introduce expert testimony to establish the standard of care Iverson owed in supervising Kane. This argument stems from a peculiar aspect of common law negligence in the District of Columbia. A plaintiff has the burden of proving the applicable standard of care, the defendant's failure to meet that standard, and the causal relationship between that failure and the plaintiff's injury. *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984). In the typical negligence case, the standard of care applicable to a person's conduct is simply that of a "reasonable man under like circumstances." Restatement (Second) of Torts § 283 (1965); *see also id.* § 298. Ordinarily a jury can ascertain this standard without the aid of expert testimony. But "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," D.C. law requires expert testimony to establish the

pertinent standard of care unless it is "within the realm of common knowledge and everyday experience" of the jurors. *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000) (internal quotation marks and citations omitted).

The expert testimony requirement originated in professional malpractice cases. *See District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995) (citing, for example, medical and legal malpractice cases in which expert testimony was required to establish the standard of care). Recently, though, the D.C. Court of Appeals has required expert testimony in a wider variety of cases, *id.*, even in those that might initially seem to fall within jurors' common knowledge. *See Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (cataloguing various non-malpractice cases in which expert testimony was required to establish the standard of care). And as *Briggs* recognized, "expert testimony is routinely required 'in negligence cases . . . which involve issues of safety, security and crime prevention.'" *Id.* at 845–46 (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006)).

Iverson argues that because this case involves security issues, Godfrey had to establish the standard of care through expert testimony. He relies on a series of district court cases. In *Edwards v. Okie Dokie, Inc.*, plaintiffs sued a nightclub and the District of Columbia for negligently supervising security personnel and police officers who used allegedly unreasonable force to stop an altercation outside a nightclub. 473 F. Supp. 2d 31, 35, 45–46 (D.D.C. 2007). In *Parker v. Grand Hyatt Hotel*, police officers and hotel security personnel forcibly removed the plaintiff from a hotel restaurant under suspicion that he attempted to steal something; he sued the District of Columbia and hotel management for negligently supervising those officers. 124 F. Supp. 2d 79, 83–84 (D.D.C. 2000). In *Farooq v. MDRB Corp.*, the plaintiff brought suit against a hotel for negligently

training and supervising security personnel who failed to find a knife that a patron carried into a hotel party and used to kill the plaintiff's son. 498 F. Supp. 2d 284, 285–86 (D.D.C. 2007). The district court granted summary judgment in each of these cases because the plaintiffs failed to present expert testimony establishing the standard of care applicable to a municipality or business entity in training and supervising its police or security officers. *Edwards*, 473 F. Supp. 2d at 46; *Parker*, 124 F. Supp. 2d at 90; *Farooq*, 498 F. Supp. 2d at 287.

We do not believe these cases stand for the proposition that expert testimony is always required to establish the standard of care in cases involving supervision of security personnel, much less personal bodyguards. Expert testimony was necessary to establish the standard of care for installation of cushioning under the monkey bars on a playground, *Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C. 1995), but not to establish whether holes in the side rails of a playground slide created an unreasonably dangerous condition, *District of Columbia v. Shannon*, 696 A.2d 1359, 1365–66 (D.C. 1997). As the court put it in *Shannon*, "It takes no expert knowledge of human behavior to know that children stick their fingers in holes." *Id.* at 1365. As to the need for expert testimony, the factual context mattered in those cases and it matters in this one too.

The key distinction between what happened at the Eyebar and the district court cases Iverson cites is that here the individual with the supervisory authority (Iverson) was *present* when his employee (his personal bodyguard Kane) committed the tortious acts. It was this fact, together with the duration of the melee, that led the district court to believe that the jury could find that Iverson had the ability to supervise or control Kane's behavior that night, a mandatory element of the negligent supervision tort. Iverson's presence during the attack also affects the standard of care. A jury may need the aid of expert

testimony to evaluate how a hotel should train and otherwise supervise its security guards to ensure that they do not unreasonably use force *on some future date*. But it is a different thing altogether to say such expert assistance is needed to establish the standard of care for an individual who is present while his personal bodyguard, acting on his behalf in clearing a room in a nightclub, beats a customer and causes significant injuries. Iverson has pointed to no case in the District of Columbia – nor have we been able to locate any – dealing with the standard of care a person owes in supervising his personal bodyguard in his presence. The evidence in this case supported the jury's finding that Kane attacked Godfrey in a fight that lasted several minutes, and that Iverson stood and watched without attempting to do anything to stop the beating. *See 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 679 (D.C. Cir. 2006). We find no error in the district court's ruling that the jury did not need the assistance of expert testimony to determine the standard of care Iverson owed to Godfrey.

It would serve no purpose to discuss Iverson's and Kane's other arguments. We have considered these contentions and have concluded that  the district court committed no reversible error. We do not reach Godfrey's cross-appeal because he conditioned it on our ordering a new trial.

*Affirmed.*